**PLANTERS' COTTON OIL CO. v. GODWIN-HUMPHREYS CO.**   (No. 2257.)

(Court of Civil Appeals of Texas. Texarkana. April 15, 1920. Rehearing Denied April 29, 1920.)

1. Pleading 111—Plea of privilege to amended petition held adjudicated by denial of plea to original.

Where a plea of privilege was denied as to original petition, the issue raised by plea of privilege to an amended petition was too late, having already been adjudicated; it not being alleged in the second plea or shown by the evidence or record that the cause of action set out in the amended petition was different from that pleaded in the original petition.

2. Sales 58—Rules of association referred to in contract made part thereof.

A clause in a sale contract to the effect that the sale was made subject to the rules of a cotton association *held* to make such rules part of the contract so as to render seller liable for failure to deliver at least 85 per cent. of the minimum estimated quantity to be put out by the seller, who was engaged in manufacturing and selling cotton seed products.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Suit by the Godwin-Humphreys Company against the Planters' Cotton Oil Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Wear & Frazier, of Hillsboro, for appellant. Hunt & Teagle, of Houston, for appellee.

HODGES, J. This suit was filed by the appellee against the appellant in September, 1916. It appears that both parties are private corporations. The original petition is not in the transcript, and we have no means of determining the character of the suit except by the amended pleadings subsequently filed.

On March 4, 1919, the appellee filed an amended original petition, which contains several counts, and the case was tried upon that petition. The first count was a common-law action to recover damages for breach of a contract. It was alleged, in substance, that in September, 1915, the plaintiff and the defendant entered into a written contract by the terms of which the plaintiff agreed to purchase and the defendant agreed to sell the "balance of output of mill-run cotton linters, estimated at from 300 to 600 bales, at a price of 4 cents per pound f. o. b. the cars at Frost, Tex." The season which that contract was

---

to cover was the run beginning in the fall of 1915 and ending in the summer of 1916. The contract was made subject to the rules and regulations of the Texas Cotton Seed Crushers' Association, and the rules referred to were set out in the petition. A breach of that contract was alleged, for which damages were claimed. In another count the plaintiff alleged that the matters in dispute between the parties had been submitted to arbitration under the rules of the Texas Cotton Seed Crushers' Association, and an award of damages had been made in favor of the plaintiff, and judgment was asked for that amount upon that award. There were some other counts in the petition, which need not be here considered. The appellant filed its plea of privilege, claiming the right to be sued in Navarro county, the place of its legal residence. That plea was promptly called to the attention of the court, and was sustained as to one count and overruled as to the other. The case remained upon the docket till March 4, 1919, when the appellee filed its amended original petition. A few days thereafter the appellant filed another plea of privilege, in proper form and verified as required by the act of 1917. It was not alleged in that plea or shown by the evidence that the cause of action set out in the amended original petition was different from that pleaded in the original petition. The court overruled the second plea of privilege as to that portion of the amended original petition which pleaded breach of the written contract, and sustained it as to that portion which sought a recovery upon an award. The plaintiff then abandoned the count upon the award, and the case was submitted to the court without a jury. A judgment was rendered in favor of the appellee for the sum of $2,552.11 as damages.

The court found, in substance, the following facts: The plaintiff was a private corporation domiciled in Harris county, Tex., and the defendant was a private corporation domiciled in Navarro county, Tex., on and prior to September 25, 1915. The plaintiff was on that date engaged in buying and selling cotton linters and cotton seed products, and the defendant was engaged in the business of manufacturing and selling cotton seed products and cotton linters. The plaintiff purchased from the defendant, through Kyser-Ruble Brokerage Company, the balance of the output of mill-run linters, estimated at from 300 to 600 bales, at a price of 4 cents per pound f. o. b. Frost, Tex. That contract was accepted and ratified by both parties. The defendant thereafter partially performed the contract by delivering to plaintiff 122 bales of the linters. Three hundred bales of linters had been previously sold by defendant and were not included in the contract, but specially excepted therefrom. The contract was made subject to the rules of the Texas Cotton Seed Crush-

ers' Association, and under those rules a bale of linters should weigh 500 pounds. The term "mill-run" in the contract was modified by the rules of the association so as to permit a variance of 15 per cent. more or less from the estimate output; that is, the defendant would be required to deliver within 15 per cent. of the minimum of the estimate; and under section 3, rule 15, defendant was required to deliver 85 per cent. of the estimate amount named in the contract. One hundred and twenty-two bales averaging 439 pounds each were shipped. Plaintiff made demand for delivery of the linters within a reasonable and proper time after ascertaining that defendant would not deliver additional linters under its contract. It thereafter went into the open market and bought 133 bales of linters of the kind and quality described in the contract at $7.60 per hundredweight. By reason of having to pay that price plaintiff sustained damages to the extent of the difference between the contract price and the sum paid. The court further found that the linters were to be shipped with sight draft attached to the bill of lading, draft to be paid at Houston, Tex. The contract was made by the broker referred to in substantial conformity to the form prescribed by the rules of the Texas Cotton Seed Crushers' Association. He concluded as a matter of law that the linters were to be shipped to plaintiff at Houston, Tex., with sight draft attached to the bill of lading, and that the contract was to be performed in Harris county, Tex., and for that reason the district court of Harris county had jurisdiction to try the case. He further concluded that the defendant was bound to deliver under its contract 85 per cent. of the minimum amount of the estimated output of the mill. Upon those facts the court rendered the judgment here complained of.

[1] The first and second assignments of error complain of the refusal of the court to sustain appellant's pleas of privilege; the reasons given being that no controverting affidavit had been filed by the plaintiff. It is argued that, in the absence of such a contest, it became the duty of the trial court to order a transfer of the case to the county of defendant's residence. At the time the first plea was filed and acted on there was no law making a verified plea of privilege prima facie evidence of the truth of the facts therein stated. That statute was enacted in 1917. See Acts 1917, p. 388 (Vernon's Ann. Civ. St. Supp. 1918, art. 1903). The second plea of privilege came too late, and should have been overruled upon that ground alone. The issue raised by it had already been adjudicated. The record contains an agreement as to the facts bearing upon the issue raised by the appellant's plea of privilege, from which we quote the following:

"The contract expressly provides that the sale is to be governed by the rules and regulations of the Texas Cotton Seed Crushers'

Association, and the defendant was fully conversant with said rules and regulations; that under the terms of said contract the defendant was bound to deliver to the plaintiff at Houston, Tex., certain bales of cotton linters, and under the terms of said contract 122 bales of linters were shipped to Houston, Tex., and under the terms of said contract the bills of lading for said shipment were to be forwarded to Houston, with draft attached thereto, for the purchase price, the parties contemplating that said drafts would be paid in Houston, Tex."

The court found as a fact that the contract sued on in this instance was in writing and was to be performed in Harris county, where the suit was pending. The appellant does not assail the sufficiency of the evidence to support those findings. The assignments are therefore overruled.

[2] It is further contended that the evidence was not sufficient to support the judgment rendered. The appellee alleged and proved that the contract was made over the telephone by a broker, and was afterwards confirmed by the following letter:

"Ft. Worth, Tex., Sept. 25, 1915.
"Contract No. 1027.

"Godwin-Humphreys Co., Houston, Texas, Buyers.
"Planters' Cotton Oil Co., Frost, Texas, Sellers.

"Gentlemen: Referring to phone conversation yesterday and to-day between Mr. Godwin-Humphreys Co., Houston, Tex., and Mr. Griffin, of Planters' Cotton Oil Co., of Frost, Tex., and ourselves, we beg to confirm having this day sold to Godwin-Humphreys Co., Houston, Tex., for account of the Planters' Cotton Oil Co., Frost Tex., the season's output (1915–1916) of mill-run linters, with the exception of three hundred bales which has been sold, at the price of four cents (4¢) per pound f. o. b. cars Frost, Tex. Linters are to be made from sound cotton seed. (The 300 bales which had been previously sold are to be shipped one hundred bales September, one hundred bales October, one hundred bales November.) Balance of output is estimated at from 300 to 600 bales.

"Shipment: As fast as made after completion of linters which was previously sold.
"Routing: Buyer's option.
"Terms: Sight draft on buyer with B/L attached.

"This contract is made in triplicate, one copy being sent to each buyer and seller and the original retained in our office on file.

"This sale is made subject to the rules of the Texas Cotton Seed Crushers' Ass'n.

"Commission: Twenty-five cents (25¢) per bale to be paid by sellers payable at Ft. Worth, Tex.
"Yours very truly,
"The Kyser-Ruble Brokerage Co.,
"By C. R. Ruble,　As Brokers Only."

The rules of the Texas Cotton Seed Crushers' Association referred to in the foregoing letter are as follows:

"Rule 15, Section 3. When a sale is made of season's output of linters the seller must ship and the buyer must receive all the linters seller makes to the end of the season, provided that when estimated number of bales is stated in the contract or in confirmation of sale or purchase the buyer may demand and seller must ship, or may ship whether demanded or not, fifteen per cent. (15%) in excess of estimate quantity, if he makes sufficient number of bales to enable him to do so, and buyer must receive and pay for same at contract price. Should seller not make the quantity estimated, he shall deliver the number of bales made, the shipment of eighty-five per cent. (85%) of the estimated quantity shall be deemed a fulfillment of the contract."

It was further shown that in March following the making of that contract the appellant ceased the operation of its mill and refused to make further shipments. Eighty-five per cent. of the lowest estimate amounted to 133 bales more than the appellant shipped or offered to ship.

We have carefully examined the facts, and conclude that the judgment of the court is not subject to the objections made, and it is accordingly affirmed.